IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                                        )<br>                     Plaintiff,     )<br>                                                        )<br>v.                                                     )<br>                                                        )<br>RAMIZ HODZIC and                     )<br>NIHAD ROSIC,                               )<br>                                                        )<br>                     Defendants.  ) | Case No. 4:15 CR 49 CDP<br>                         (DDN) |

## SUPPLEMENTAL MOTION OF DEFENDANTS  HODZIC AND ROSIC TO DISMISS THE INDICTMENT UNDER THE DOCTRINE OF COMBATANT IMMUNITY AND MEMORANDUM IN SUPPORT OF THAT MOTION

Defendants Ramiz Hodzic and Nihad Rosic offer this supplemental motion to dismiss the indictment under the doctrine of combatant immunity and supporting memorandum.  This motion supplements Defendants' Joint Motion to Dismiss Counts One and Three, Document 390 and attachments, which all defendants joined, and incorporates the fact and arguments that the Joint Motion raises.

I.    **Factual Statement**

In July, 2013 defendant Ramiz Hodzic learned that his friend Ramo Abdullah Pazara was in Syria intending to join soldiers fighting in the civil war against the Syrian government.  Pazara's presence in Syria was something of a surprise to Hodzic.  Earlier in 2013, Pazara had left the United States to return to Bosnia, and Hodzic believed that Pazara intended to build a home in Bosnia, farm, and raise sheep.

Hodzic's reaction to Pazara's decision to join the fighting in Syria cannot be understood outside the context of their shared history of the Bosnian civil war from 1992 to 1995, and their embrace of religion after they separately immigrated to the United States following the Bosnian war.  Hodzic and Pazara were both born in the former Yugoslavia and both are from the town of Teslic.  Hodzic is the oldest of six children and comes from a family of mixed religion.  His mother is Catholic and his father was Muslim.  In May, 1992, when the disintegration of Yugoslavia led to civil war, Hodzic was age 18.  A friend warned that unless he fled Teslic, he would be killed by Serbian armed forces that were beginning to dominate that portion of Yugoslavia.  Hodzic fled to Tesanj, where he remained for a short while before leaving for Studenci to fight the Serbs with about 20 other men, whom Hodzic understood to be Catholics.

In Studenci, Hodzic was shown how to fire a gun and then sent immediately to what was described as the front line defending against attacking Serbian forces. He fought in the clothes he arrived in.  None of his fellow fighters were uniformed although some wore military-style clothing.  Throughout the Yugoslavian civil war, Hodzic and his fellow fighters had to rely on clothing and supplies sent by Bosnian refugees and supporters in Germany, Italy, and Austria.  Hodzic remained in Studenci until approximately September, 1992, when Serbian forces, supported by artillery and helicopters, drove Bosnian fighters from the town.

Evicted from Studenci, Hodzic and his fellow fighters traveled in stages back to Tesanj where Hodzic joined a group that his father had been fighting with.  This

2

group mixed both Catholic and Muslim forces and the soldiers wore whatever clothing they could acquire through donations from abroad.  Hodzic joined a special unit of this group to scout the location of Serbian forces.  He commanded a group of about eight to ten men.  His heroism was later recognized with the Golden Lily decoration and he was interviewed on the radio.

While in Studenci and after initially arriving again in Tesanj, Hodzic had no contact with his mother and siblings until approximately October, 1993, when they also fled to Tesanj after Serbian forces evicted them from their home in Teslic.  Hodzic learned that his family was forced to walk through minefields to reach Tesang and, more horribly, that Serbians had raped his mother in front of his brothers and sisters.  Sometime later, Hodzic witnessed his father sustain massive injuries in battle, resulting in the loss of his legs and serious internal injuries.

Pazara and Hodzic are probably related through Hodzic's mother's family.  They knew each other only slightly before 1995 when Pazara arrived in Tesanj after escaping from the Serbs.  Hodzic is uncertain about Pazara's experiences before he arrived in Tesanj but believes that Serbians forced Pazara to work digging trenches and other menial support-related tasks.  He also believes that Pazara might have spent time in a Serbian concentration camp.  He and Pazara became friends in Tesanj during the waning days of the Yugoslavian civil war.

With the cessation of hostilities in 1995, both remained in Tesanj.  Hodzic worked in various constructions jobs and married Sedina approximately a month before his father died of the wounds he sustained in the civil war.  In February,

3

1998, he and Sedina immigrated to the United States, living in the Washington, D.C. area until resettling in St. Louis.  Pazara also immigrated.  He and Hodzic reconnected sometime later and both became over-the-road truck drivers.  Pazara was successful enough that he owned his own trucking company for which Hodzic was a driver for about six months.  Their contact consisted almost exclusively of telephone calls; Hodzic describes his truck driving jobs as coffee, cigarettes, and conversation.  When Pazara's marriage dissolved, his company did also.  Hodzic began driving for another company and maintained his long distance relationship with Pazara.

In approximately 2010, Hodzic began to reflect on religion.  Although he had been reared in a non-religious family, religion offered a connection to both the Bosnian community in the United States and to the traditions and culture of his homeland as well as path to living a just and moral life. Pazara also experienced a religious awakening and attributed his ability to stop alcohol and marijuana use to embrace of religion.

In 2013, Pazara decided to change his life more profoundly.  He returned to Bosnia to a home he had built on land his family owned, intending to farm and raise sheep.  Hodzic encouraged this plan and provided Pazara with a large quantity of garlic seed for use on the farm.  Thus, Pazara's decision to travel to Syria and join the fight against Bashar al-Assad in the Syrian civil war caught Hodzic by surprise.  Pazara, however, informed him that Assad was treating Muslims in Syria in the same manner that the Serbs treated Muslims in Bosnia.  Through Pazara and

4

other Bosnian Internet sites, Hodzic learned of other Bosnians fighting in Syria against Assad.  Hodzic saw a need to provide supplies of clothing and other items as identical to the needs he experienced in Bosnia in 1992.  To this end, he communicated regularly with friends including those designated as co-defendants in the indictment in this case soliciting funds to be used to provide money and supplies to Pazara and other Bosnians fighting in Syria.

Defendant Nihad Rosic is also a Bosnian refugee, but was too young to have fought in the Yugoslavian civil war.  His family immigrated to the United States in 2001, settling in Utica, New York in 2005, where they joined a community of Bosnian expatriates that included Pazara's family.  Like Hodzic and Pazara, Rosic became an over-the-road truck driver.  In the long conversations with which he filled his time in the truck, Rosic furthered his relationship with Pazara, whom he came to know in 2011 through a mosque in Utica, and Hodzic, whom he met through Pazara.  Influenced by Pazara and Hodzic and by challenges in his own life, Rosic became increasingly interested in religion.  Rosic shared a deep concern for Pazara's welfare with Hodzic as well as genuine dismay at the events in Syria as the Assad government began a war against its own citizens, targeting innocent civilians on religious and ethnic grounds.

Both Hodzic and Rosic saw events in Syria through the lens of their Bosnian experiences and community.  Further, they had a profound and enduring friendship with Pazara, whom they knew to be passionate, generous, and committed to a moral life grounded in sincere religious beliefs.  Their support of Pazara arose

5

from this friendship, and from their shared determination that their own experiences in Bosnia compelled them to assist Pazara and his fellow Bosnians.

## II. The combatant immunity doctrine precludes prosecution under 18 U.S.C. § 956, the basis for Count 2 of the indictment in the same manner that it precludes prosecution under 18 U.S.C. § 2339A, the basis for Counts 1 and 3.

Count II charges a violation of 18 U.S.C § 956(a),[1] which is the crux of all three counts in the indictment. Counts I and III charge violations of 18 U.S.C. § 2339A,[2] alleging respectively (1) a conspiracy to provide material support or resources and (2) the actual provision of material support or resources in preparation for or the carrying out of a violation of section 956. This statute applies to '[w]hoever . . . conspires with one or more other persons . . . to commit at any place outside the United States **an act that would constitute the offense of**

---

[1] (a)(1) Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in sub-section (a)(2)." 18 U.S.C. § 956(a)(1).

[2] "Whoever provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section 32, 37, 81, 175, 229, 351, 831, 842(m) or (n), 844(f) or (i), 930(c), 956, 1091, 1114, 1116, 1203, 1361, 1362, 1363, 1366, 1751, 1992, 2155, 2156, 2280, 2281, 2332, 2332a, 2332b, 2332f, 2340A, or 2442 of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), section 46502 or 60123(b) of title 49, or any offense listed in section 2332b(g)(5)(B) (except for sections 2339A and 2339B) or in preparation for, or in carrying out, the concealment of an escape from the commission of any such violation, or at-tempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life." 18 U.S.C. § 2339A.

6

**murder**.'"[3] As Defendants' Joint Motion to Dismiss Counts One and Three notes,[4] section 956 incorporates the definition of murder from 18 U.S.C. § 1111, which defines murder as the unlawful killing of a human being with malice aforethought.[5] All of the reasons discussed in Defendants' Joint Motion concerning the application of the combatant immunity doctrine to Counts I and III apply equally to Count II.[6] Count II, like Counts I and III, requires proof beyond a reasonable doubt of unlawful killings. The doctrine of combatant immunity, however, precludes the possibility that defendants agreed to, supported, or in any way desired unlawful killings. Because they supported combat by soldiers who by definition operated with combatant immunity, an unlawful killing is a legal impossibility in this case.

As Defendants' Joint Motion demonstrates, international and United States law hold that a soldier has the right to kill another soldier.[7] Combatant immunity doctrine defines a soldier's deliberate, intentional, premeditated killing of another as a lawful killing. Accordingly the combatant immunity doctrine renders such killings immune from prosecution.[8] Defendants' Joint Motion establishes that this

---

[3] *United States v. Chhun,* 744 F.3d 1110, 1116 (9th Cir. 2014) (emphasis added).
[4] Defendants' Joint Motion to Dismiss Counts One and Three at 10.
[5] *See id.*
[6] *See id.* at 10-29.
[7] *See* Defendants' Joint Motion at 11. *See also* Francoise Hampson, *Human Rights Law and International Humanitarian Law: Two Coins or Two Sides of the Same Coin?,* 1 Bull. Of Human Rights 46, 50 (1991); Samuel G. Walker, *Lawful Murder: Unnecessary Killing in the Law of War,* 25 Can. J.L. & Juris. 417, 417 (2012).
[8] *See* Defendants' Joint Motion at 11; Walker at 418.

7

doctrine applies to civil wars and specifically to the Syrian civil war in which Pazara and other Bosnians fought.[9]

Evidence at the pretrial hearings on Defendants' combatant immunity motions will establish that any agreement among defendants was focused on Pazara (and those in his company, primarily Bosnians) acting as soldiers fighting the Syrian government in exactly the same manner that Hodzic fought against Serbian aggressors during the Yugoslavian civil war. Defendants understood the role and conduct of Pazara and his group of fellow Bosnians through their experiences from 1992 to 1995; that is, as soldiers resisting appalling aggression not just against themselves as soldiers but against civilians attacked by their own government. Accordingly, their agreement implicitly and explicitly supported lawful conduct as soldiers who, through the doctrine of combatant immunity, committed lawful acts. They never agreed through words or conduct to engage in criminal behavior. They agreed to support fellow Bosnians who sought only to engage in the same kind of lawful resistance to brutal persecution of innocent civilians targeted for religious and ethnic reasons, something that they themselves had endured from 1992 to 1995. Thus, any agreement they entered during the period charged in the indictment was grounded implicitly, but firmly, on the doctrine of combatant immunity.

Significantly, combatant immunity does not disappear because some individual soldiers commit unlawful killings. The Supreme Court has noted this principle, holding that only these particular soldiers are subject to "trial and punishment by

---

[9] *See* Defendants' Joint Motion at 10-22.

8

military tribunals for acts which render their belligerency unlawful."[10]  The self-evident nature of this principle is readily apparent.  No one would suggest, for example, that American soldiers fighting in Viet Nam lost combatant immunity because other soldiers engaged in the My Lai Massacre.[11]  Combatant immunity disappears only if the government can prove that a particular individual engaged in specified unlawful conduct.[12]

For the entire period of his presence in Syria, from July, 2013, to his death in September, 2014, Pazara and others the defendants supported fought as soldiers against the Assad government in the Syrian civil war.  The cause for which he fought as a soldier is as inconsequential to the application of the combatant immunity doctrine as the cause of a German or Japanese soldier fighting against the United States in World War II or a Confederate Army soldier in the American Civil War.  Unless the government proves the specific acts that render combatant immunity doctrine inapplicable, and it has neither alleged nor proved such conduct, Pazara and the others whom the defendants supported have the privilege of combatant immunity rendering any conduct lawful.  The Court should dismiss the indictment.

---

[10]    See Ex Parte Quirin, 371 U.S. 1, 31 (194?)
[11]    See https://en.wikipedia.org/wiki/My_Lai_Massacre (describing the March 16, 1968 killing of between 347 and 504 unarmed civilians in South Vietnam by United States soldiers).
[12]    See Ex Parte Quirin at 31.

9

## Conclusion

For the reasons stated in this motion and Defendants' Joint Motion, Defendants Hodzic and Rosic respectfully request that the Court dismiss the indictment.

Dated July 24, 2017

        Respectfully submitted,

        /s/Diane L. Dragan
        Assistant Federal Public Defender
        1010 Market Street, Suite 200
        St. Louis, Missouri 63101
        Telephone: (314) 241-1255
        Fax: (314) 421-3177
        E-mail: Diane_Dragan@fd.org
        Attorney for Defendant Hodzic

        /s/ JoAnn Trog
        121 West Adams Avenue
        St. Louis, Missouri  63122
        Telephone: (314) 821-1111
        Fax: (314) 821-9798
        E-mail: jtrogmwb@aol.com
        Attorney for Defendant Rosic

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2017, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorney Matthew Drake.

        /s/Diane L. Dragan