UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No.  4:15 CR 00049 CDP (DDN) |
| RAMIZ ZIJAD HODZIC, | ) |
| NIHAD ROSIC, and | ) |
| MEDIHA MEDY SALKICEVIC, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS RAMIZ ZIJAD HODZIC, NIHAD ROSIC AND MEDIHA MEDY SALIVCEVIC JOINT MOTION FOR RECONSIDERATION OF THEIR RESPECTIVE DETENTION ORDER**

Come now Defendants Ramiz Zijad, Nihad Rosic, and Mediha Medy Salkicevic, by and through undersigned Counsel, and for their Joint Motion for Reconsideration of Their Respective Detention Orders, states as follows

1. On February 5, 2015, a Redacted Indictment was filed against Defendants (Doc. 2) and contemporaneous thereto the Government filed Motions for Pretrial Detention on Defendants Hodzic (Doc. 5), Defendant Rosic (Doc. 7), and Defendant Salkivcevic (Doc. 8).

2. On February 6, 2015, Defendant Hodzic was arrested and has been in continuance custody of the United States Marshal since that time.

3. On February 6, 2015, Defendant Rosic was arrested and has been in continuance custody of the United States Marshal since that time.

1

4. On February 6, 2015, Defendant Salkicevic was arrested and has been in continuance custody of the United States Marshal since that time.

5. The pending charges in the Indictment against the Defendants are as follows:

(a) Count I charges the Defendants with conspiring with Co-Defendants to provide material support to terrorists in violation of 18 U.S.C. § 2339A;

(b) Count II charges Defendants with conspiring with Co-Defendants to knowingly provide material support, in the form of money and physical items, during August and September, 2013, knowing and intending that this support was to be used to carry out a conspiracy to commit the offenses of murder or maiming at places outside the United States in violation of 18 U.S.C. § 2339A; and

(c) Count III charges Defendants Hodzic and Rosic with providing materials and supplies, knowing this support was to be used to carry out a conspiracy to commit murder and maiming outside the United States, in violation of 18 U.S.C. § 2339A.

9. The Eighth Circuit has held that for a defendant to seek to re-open a detention hearing a Defendant

> . . . must, first, "present[] information that was not known or available to him at the time of his original detention hearing, and then, second, show that such information is material to and has a substantial bearing on whether he should remain detained." *United States v. Petters*, 2009 U.S. Dist. LEXIS, 6489 (S.D. Minn)(quoting *United States v. Archambault*, 240 F. Supp. 2d 1082, 1084 (D.S.D. 2002).

10. In view of the Defendants' lengthy incarceration, now exceeding forty-three

(43) months for each Defendant, request is made that this Court reconsider its previously-entered Orders as to Bond for the Defendants. To assist the Court in its determination, the respective Defendants offer the following:

    (a)    **Defendant Ramiz Zijad Hodzic** has previously waived his right to bond on February 20, 2015. However, now that more than forty-three (43) months have elapsed since his arrest and pursuant to the Court's Order of February 20, 2015 (Doc. 48). However, Defendant believes there have been significant change of circumstances, to-wit:

    (i)    Defendant Hodzic maintains a residence in Saint Louis, Missouri, and possesses the means with which to obtain employment;

    (ii)    Defendant's spouse, Sedina Unkic Hodzic is a Co-Defendant in this case and has her own attorney. However, Defendant does not believe that this should be an impediment to his placement on Bond;

    (iii)    Defendant has been housed in the St. Louis County Jail in Clayton, Missouri, since on or about February 6, 2015, and during this time he has had no violations of any kind and has been an exemplary individual during this period of pretrial detention.

    (iv)    During the 43 months of Hodzic's pretrial incarceration, his family has remained a rock of stability and deepened its ties to the community despite obvious hardships. They have struggled to make ends meet economically in part by depending on earnings of his 20-year old daughter, Adna, and his 16-year old son, Ziyad. If Hodzic was released on bond, his earnings would help the family avoid precarious financial circumstances. At a minimum, he could ease the childcare burden by taking care

3

of his five-year old son, Ali.  Ali has no memories of his father outside of the jail. Additionally, the local jails do not allow contact visits so he has been unable to have so much as a hug in the last four years.

    (v) Hodzic's incarceration over the past 43 months has cost his oldest daughter, Adna, significant educational opportunities.  Adna indicates her father always encouraged their education and told her that getting a good education was her first and primary job.  However, after his incarceration she had to quit most of her extracurricular activities including soccer, which lost her multiple scholarship opportunities.  She also began suffering from anxiety, panic attacks and depression as both of her parent's indictments placed a tremendous amount of stress on her. Despite her struggles, she was offered multiple scholarships including to her top choice school in London.  However, with her family in a precarious situation and the real possibility she will have to take custody of her younger siblings, she had to forego the scholarship opportunity to attend college in London, England.  Hodzic's absence has forced her to assume many parental responsibilities over her two younger brothers.  This responsibility includes financial support; her income is essential to her family's economic wherewithal. Notwithstanding these obligations, she continued her education at St. Louis Community College and the University of Missouri, St. Louis.  Jail staff at the St. Louis County Jail has marveled to every one of Hodzic's attorneys how remarkable Adna and her brothers are in their regular, weekly visits to their father.  The staff's unsolicited expressions of praise for Hodzic's children illustrates how securely the Hodzics are integrated into the local community.

    (vi) His father's incarceration has also had a deep and lasting

impact on Hodzic's oldest son, Ziyad. At 15, Ziyad had to get his first job. He works just short of full time hours every week to help support the family. Despite this heavy workload, he also attends high school and competes on the track and cross-country teams. His job at Dairy Queen is essential to the family's economic well-being. Every weekend, he and his siblings visit their father in custody. He has been forced into the role of "man of the house"; and

(vii) Defendant agrees with his Co-Defendants as to the conditions set forth hereinafter and would abide by each such condition and any other condition as mandated by this Court.

(b) **Defendant Rosic** was denied Bond when this Court granted the Government's Motion for Detention on April 17, 2015 (Doc. 142). However, there have been some significant change of circumstances which Defendant Rosic believes will support his request for Bond, to-wit:

(i) Defendant Rosic's parents have re-located and are presently living in the metropolitan Saint Louis area, now residing in St. Louis County, Missouri and have been residents of Saint Louis since late 2015;

(ii) Defendant's Mother is willing and able to serve as a third-party custodian for Mr. Rosic;

(iii) Defendant is a naturalized citizen and is well able to communicate with others and possesses the ability to become gainfully employed and has been advised that he would be able to be employed by one or more of the following potential employers, that is, a granite company, construction work and/or a local trucking company as a driver;

5

    (iv) Defendant has been housed in the St. Louis County Jail in Jennings, Missouri, since on or about March 5, 2015, and during his time there has had no violations of any kind and has been an exemplary individual during his period of pretrial detention; and

    (v) Defendant agrees with his Co-Defendants as to the conditions set forth hereinafter and would abide by each such condition and any other condition as mandated by this Court.

  (c) **Defendant Mediha Medy Salkicevic** was denied Bond when this Court granted the Government's Motion for Detention on April 17, 2015 (Doc. 145). However, now that more than forty-three (43) months have elapsed since her arrest and there have been some significant changes of circumstances and, therefore, request is made for a reconsideration of her Bond, to-wit:

    (i) Defendant Salkicevic, is a naturalized citizen, who maintains a residence in the Shiller Park area of Chicago with her husband, a permanent resident, and have four (4) daughters, the youngest of which is now nine (9) years of age;

    (ii) Defendant's spouse is willing to act as a third party custodian;

    (iii) Defendant has been housed in the Ste Genevieve County Jail in Ste. Genevieve, Missouri, since on or about February 25, 2015, and during this time she has had no violations of any kind and has been an exemplary individual during her period of pretrial detention; and

    (iv) Defendant agrees with her Co-Defendants as to the conditions set forth hereinafter and would abide by each such condition and any other

6

condition as mandated by this Court.

11. Defendants Hodzic and Rosic possess no substantial funds which may be deposited as surety and Defendant Salkicevic has limited funds with which to a Bond. Indeed, Defendant Hodzic is represented by the Federal Public Defender's Office and Defendant Rosic has counsel appointed under the Criminal Justice Act.

12. Defendants are presumed innocent.  Each has entered pleas of not guilty to all charges and have consistently maintained their innocence.

13. Although this Court made a finding that this case was a "complex" case and therefore the issues of the Speedy Trial Act have been abrogated, the Defendants' further incarceration is punitive in light of the extraordinary delay which has attended the prosecution of this case.

14. This Court issued Detention Orders on both Defendants[1] Rosic (Doc. 142) and Salkicevic (Doc. 145) and each Order stated that the Court's has significant concerns on two (2) issues, that is, (i) Statutory Presumption for Detention and (ii) Danger to the Community and Risk of Flight.

15. The law is quite clear on the appropriate standard of evidence in reaching a finding, concerning detention:

> "[d]etention is appropriate where the government proves by **clear and convincing evidence** that the Defendant is a danger to others or to the community, or when the government proves by a preponderance of evidence that the Defendant is a risk of flight, and that in either case, there are no conditions or combination of conditions that will assure the safety of the community or the Defendant's appearance at a future court date." *United States v. Buzaneli*, 2017 U.S. Dist. LEXIS 206277 (Dec. 15. 2017)(emphasis added)

---

[1] Inasmuch as Defendant Hodzic waived his detention, no in-depth consideration and Order was made (Doc. 139).

7

## MEMORANDUM OF LAW

The Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property without due process of law[.]" U.S. Const., Amendment V. The Fifth Amendment strictly prohibits the imposition of punishment before trial. The Supreme Court has held that an individual may be detained prior to trial without violating that clause so long as the confinement does not amount to "punishment of the detainee. . ." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Although "[l]iberty is the norm," the "government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *United States v. Salerno*, 481 U.S. 739, 748, 755 (1987).

It is well-settled that so long as pretrial release is administrative rather than punitive it is constitutional. *Id.* at 746-751. Whether detention is punitive rather than regulatory generally turns on "whether an alternative purpose to which [the detention] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose." *Wolfish*, 441 U.S. at 538.

Neither the Supreme Court nor any lower court has set a "bright-line limit" that demarcates when continued pretrial detention violates due process. *Salerno* at 747 n. 4 (noting "[w]e intimate no view as to the point at which detention in a particular case becomes excessively prolong, and therefore punitive, in relation to Congress' regulatory goal.") The issue of whether pretrial detention is unconstitutionally excessive is examined on a case-by-case basis. Courts have developed and applied the following non-exclusive factors when deciding whether continued pretrial detention would violate due process: (i) the non-speculative length of expected confinement; (ii) the extent to which the government

bears responsibility for delay; (iii)  the gravity of the charges; and (iv)  the strength of the evidence justifying detention including the existence of any rebuttable presumption for detention.  *See United States v. Watson*, 475 Fed. Appx. 598, 609 (2012); *United States v. Briggs*, 697 F.3d 98, 101 (2nd Cir. 2012); *United States v. Hare*, 873 F.3d 796, 801 (5th Cir. 1989); *United States v. Omar*, 157 F.Supp.3d 707, 715 (M.D. Tenn. 2017).

Length of detention is obviously a central focus of [the due process] inquiry. *Briggs,* 697 F.3d at 101.  Here, each of the Defendants has been in pretrial detention for forty-three (43) months.  This length of detention unquestionably weighs heavily in favor of release. *See United States v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987)("[A] potentially long trial commencing over seven months after detention has already begun raises grave due process concerns for the government to allay."); *United States v. Zannino*, 798 F.2d 544, 548 (1st Cir. 1986)("assum[ing] that in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement"); *United States v. Briggs*, 697 F.3d 98, 103 (2d Cir. 2012)("26-month pretrial detention "approach[es] the limits of what due process can tolerate"); *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994)(19-month detention before 8 month trial is "unquestionably a long duration"); *United States v. Millan*, 4 F.3d 1038, 1044 (2d 1993)("25-month detention before a 4-5 month trial is "a factor in [defendant's] favor").

A. **Non-speculative length of expected confinement**.    At the filing of this Motion, each of the Defendants has now been in pretrial detention in excess of forty-three (43) months.  This factor alone should weigh heavily in favor of release with stringent conditions of supervision, including but not limited to home incarceration and electronic monitoring.

B. **The extent to which the government bears responsibility for delay**. This case has continued to pend and, there is no clear time at which a trial setting can be envisioned. While Defendants acknowledge that a significant amount of discovery has, in fact, been received, Counsel has been advised that additional discovery is forthcoming.

C. **The magnitude of the threat pretrial release poses to the Government's regulatory interest in pretrial detention**. The Orders for each of Defendants Salkicevic and Rosic contain factual findings that the likelihood that both have incentives to flee. Even if the Government has met the bare statutory standard under 18 U.S.C. § 3142, as a factor in the due process analysis, the weakening of its showing weighs strongly in favor of release.

Under the Bail Reform Act, the Court must consider both the "nature" and "circumstances" of the alleged offense. 18 U.S.C. § 3142(g)(1). "The distinction between 'nature' and 'circumstances' clarifies that the former refers to the **generic** offense while the latter encompasses the **manner** in which the defendant committed it. *United States v. Singleton*, 182 F.23d 7, 11-12 (D.C. Cir. 1999)(emphasis added). The Court could find that the serious nature of the offenses charged, together with the potential significant sentences evidence that the Defendants pose a flight risk. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. Cir. 1988). However, the "circumstances" of this case which has evolved with the disclosure of the Government's evidence to-date merit the opposite conclusion:

(a) there has been absolutely no evidence received that any of the Defendant in the Indictment personally participated in the civil war which was the subject of Abdullah Pazara's role;

(b) the evidence correctly disclose the contributions made by Defendants were to further humanitarian efforts in Middle East to provide assistance to others of their

Muslim faith;

  (c) there are absolutely no allegations or evidence received that any of the Defendants in the Indictment personally participated in any acts of violence in the United States that are in any way associated with the allegations contained in the Indictment;

  (d) there are absolutely no allegations or evidence that any of these Defendants ever left the United States with the sole purpose of becoming engaged in the civil war in Syria;

  (e) that after the death of Abdullah Pazara on or about September, 2014, all activities associated with the allegations in the Indictment ceased;

  (f) the discovery received to-date consists of myriad conversations among the Defendants, however, the conversations which are the subject of translations fail to disclose any untoward conduct or statement by any Defendant within the United States or that any Defendant attempted to facilitate any act of violence in the United States; and

  (g) this Court has made a finding that the Defendants are to be permitted to present at trial the affirmative defense of lawful combatant immunity as relates to Abdullah Pazara at whose behest the allegations against the Defendants arose.

Defendants believe that it cannot be disputed that the length of Defendants' pretrial detention has crossed the due process threshold and this case falls in the "very long category." The burden remains with the Government to produce "clear and convincing evidence" to warrant the continued detention of the Defendants and, it is beyond comprehension that the Government can rely on evidence presented some four (4) years ago to sustain its burden.

If this Court will allow Defendants to be released on Bond, there is every incentive

for the Defendants to work for their vindication of the pending charges so as to allow each to maintain his or her home for each of them and their family.

Lastly, it should be noted that of all the evidence to-date received, all of the evidence concerns payments made concerning humanitarian reasons and Abdallah Pazara is now deceased some four (4) years. There has been absolutely no showing that any of these Defendants pose any danger to the community, except for determinations made four (4) years ago, and one must consider the content of his or her situation forty-three (43) months later.

Based on the above, the Defendant respectfully requests that this Honorable Court allow each of the Defendants, Ramiz Zijad Hodzic, Nihad Rosic and Mediha Medy Salkevic to be released on bond, subject to the following conditions and, any other condition(s) this Court deems appropriate:

(a) Defendant resides at his or her home and be subject to electronic monitoring or whatever other monitoring is deemed appropriate and designated as being "home incarceration";

(b) Defendant's home detention would include only the following exceptions: religious services and prayer at the mosque; medical appointments; substance abuse testing; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the Pretrial Services Office, including employment;

(c) Defendant shall not be permitted to utilize a computer or other social media except as specifically authorized by the Court;

(d) Defendant shall avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation and prosecution of this

12

case;

  (e)  Defendant shall abide by specific restrictions on personal associations and place of abode;

  (f)  Defendant not possess a firearm, destructive device, weapon, in his home or vehicle;

  (g)  Defendant refrain from the use of any narcotic drug substance and submit to periodic substance abuse testing;

  (h)  Defendant will report in to Pretrial Services at least twice a week or as often as is required; and

  (j)  for such further and other conditions as the Court deems appropriate.

WHEREFORE, for the foregoing reasons, Defendants pray that this Court determine that their present incarceration is punitive prior to an adjudication of guilt and to Order that Defendant be placed on Bond and to include the standard Bond conditions, as well as the following conditions, to-wit:

  (a)  Defendant reside at his home and be subject to electronic monitoring or whatever other monitoring is deemed appropriate;

  (b)  Defendant's home detention would include only the following exceptions: religious services and prayer at the mosque; medical appointments; substance abuse testing; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the Pretrial Services Office, including employment;

  (c)  Defendant shall not be permitted to utilize a computer or other social media except as specifically authorized by the Court;

  (d)  Defendant shall avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation and prosecution of this

case;

   (e) Defendant shall abide by specific restrictions on personal associations and place of abode;

   (f) Defendant not possess a firearm, destructive device, weapon, in his home or vehicle;

   (g) Defendant refrain from the use of any narcotic drug substance and submit to periodic substance abuse testing;

   (h) Defendant will report in to Pretrial Services at least twice a week or as often as is required; and

   (i) for such further conditions as the Court deems appropriate.

Respectfully submitted,

/S/ **JoANN TROG**
JoANN TROG  42725MO
Attorney for Defendant Nihad Rosic
121 West Adams Avenue
St. Louis, Missouri 63122
Telephone:  (314) 821-1111
Facsimile:   (314) 821-9798
Jtrogmwb@aol.com


/S/ **DIANE DRAGAN**
Diane Dragan
Assistant Fed. Public Defender
Attorney for Defendant Ramiz Hodzic
1010 Market St., Suite 200
Saint Louis, Missouri 63101
Telephone: (314) 241-1255
Facsimile: (314) 421-3177
Diane_Dragan@fd.org

/S/ *KEVIN CURRAN*
Kevin Curran
Assistant Fed. Public Defender
Attorney for Defendant Ramiz Hodzic
1010 Market St., Suite 200
Saint Louis, Missouri 63101
Telephone: (314) 241-1255
Facsimile: (314) 421-3177
Kevin_Curran@fd.org

/S/ *MICHAEL DWYER*
Michael Dwyer
Assistant Fed. Public Defender
Attorney for Defendant Ramiz Hodzic
1010 Market St., Suite 200
Saint Louis, Missouri 63101
Telephone: (314) 241-1255
Facsimile: (314) 421-3177
Michael_Dwyer@fd.org


**/S/ ANDREA A. GAMBINO**
Andrea E. Gambino
Law Offices of Andrea E. Gambino
Co-Counsel for Defendant Mediha Salkicevic
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois  60604
Telephone:  (312) 322-0014 or
                      (312) 952-3056
Facsimile:  (312) 341-9696
agambinolaw@gmail.com

/S/ *JOAN K. MILLER*
Joan K. Miller
Co-counsel for Defendant Mediha Salkicevic
1515 North Warson Road, Suite 249
Saint Louis, MO 63132
Telephone:     (314) 997-7700
Facsimile:      (314) 997-7705
jmiller@prodigy.net

## CERTIFICATE OF SERVICE

       The undersigned certifies on October 10, 2018, that a true and correct copy of Defendants Ramiz Zijad Hodzic, Nihad Rosic and Mediha Medy Salkicevic Joint Motion for Reconsideration of Their Respective Detention Orders was electronically filed and served on the Court's electronic filing system.

                                                                            /S/ *JoAnn Trog*
                                                                         Attorney for Defendant Rosic