UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>    Plaintiff,   )<br>)<br>)<br>)<br>v.   )<br>)<br>)<br>)<br>RAMIZ ZIJAD HODZIC,   )<br>    a/k/a Siki Ramiz Hodzic,   )<br>)<br>SEDINA UNKIC HODZIC,   )<br>)<br>NIHAD ROSIC,   )<br>    a/k/a Yahya AbuAyesha Mudzahid,   )<br>)<br>MEDIHA MEDY SALKICEVIC,   )<br>    a/k/a Medy Ummuluna,   )<br>    a/k/a Bosna Mexico, and   )<br>)<br>ARMIN HARCEVIC,   )<br>)<br>)<br>    Defendants.   ) | Case No. 4:15 CR 00049 CDP DDN |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S JOINT MOTION FOR RECONSIDERATION OF BOND AND ORDERS OF DETENTION**

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Matthew T. Drake, Howard J. Marcus, and Kenneth R. Tihen, Assistant United States Attorneys for said District, and Joshua D. Champagne, Trial Attorney for the United States Department of Justice, National Security Division, Counterterrorism Section, and submit the following response to Defendants Ramiz

1

Hodzic, Nihad Rosic, and Mediha Medy Salkicevic's Joint Motion For Reconsideration of Their Respective Detention Orders. The Government states as follows:

On October 10, 2018, three of the captioned Defendants, Ramiz Hodzic, Nihad Rosic, and Mediha Medy Salkicevic filed a joint "Motion for Reconsideration of Their Respective Detention Orders." The Government objects to the Defendant's Motion and believes that there are no conditions or combination of conditions which will reasonably assure the appearance of the Defendant as required, and the safety of any other person and the community.

## I.   Background

On February 12, 2015 the Honorable Judge Jeffrey Cole held a detention hearing in the Northern District of Illinois and ordered Defendant Salkicevic detained. Thereafter, on March 11 and 23, 2015, this Court held an extensive detention hearing in the Eastern District of Missouri concerning Defendant Salkicevic. The hearing included the presentation of evidence, witness testimony, and argument. The hearing also included a recommendation from the Pretrial Services Office of detention. On April 17, 2015, Defendant Salkicevic was ordered detained pending trial.

On February 20, 2015, the Court held a detention hearing concerning Defendant Ramiz Hodzic. The hearing also included a recommendation from the Pretrial Services Office of detention. The Defendant waived his hearing and agreed to an order of detention, which was issued the same day.

On March 20 and 31, 2015, the Court held a detention hearing in the Eastern District of Missouri concerning Defendant Rosic. The hearing included the presentation of evidence, and argument. The hearing also included a recommendation from the Pretrial Services Office for detention. On April 14, 2015, Defendant Rosic was ordered detained pending trial.

As the Government pointed out in the detention hearings, at numerous status conference hearings, and in briefings, this case and associated discovery involves hundreds of thousands of pages of documentary materials, thousands of hours of audio/video recordings, tens of thousands of pages of Facebook postings.  Pretrial matters involved extensive arguably suppressible evidence including numerous warrants and statements, Fourth Amendment issues and complex court authorized surveillance. The vast majority of the original evidence is in a foreign language and has required hundreds of hours of translation work by certified trained linguists.  This is evident in the fact that the Defendants have regularly asked for, and justifiably received, numerous continuances. The Government has taken on the burden of translating, transcribing and producing thousands of pages of materials, and continues to do so.  As the Defendants know well from their use of linguists translators, such endeavors are extremely time consuming.  Many of the materials being translated and transcribed have been at the Defendants request.

## II.    Legal Framework

The Bail Reform Act sets out the framework for evaluating whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. A defendant may be detained pending trial only if a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). To make such a finding, the judicial officer must hold a detention hearing per 18 U.S.C. § 3142(f).

The factors relevant to considering whether there are release conditions that can ensure the Defendant's appearance and the safety of the community are: (1) the nature and circumstances of the offense, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant would pose to the community if released. *Id.* § 3142(g).  While some of these

factors are reexamined in his brief, they have all previously been argued, considered and decided by this Court in prior hearings.

In this case all Defendants are charged with offenses listed in Title 18, United States Code, Section 2332b(g)(5)(B); specifically two counts of violating Title 18, United States Code 2339A (one count of Conspiracy to Provide Material Support to Terrorists, and a second count of Providing Material Support to Terrorists), both of which are Federal crimes of terrorism for which a maximum term of imprisonment of 10 years or more is prescribed.  Additionally, Defendants Hodzic and Rosic are charged with violating Title 18, United States Code, Section 956 (Conspiracy to Kill or Maim Persons in a Foreign Country) for which a maximum term of imprisonment is not more than twenty-five years.  Accordingly, a rebuttable presumption arises pursuant to Title 18, United States Code, Section 3142(e)(3) that there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community.

Defendants contend that they should be released because their pretrial detention is unconstitutionally excessive.  In *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the United States Supreme Court held that pre-trial detention does not violate due process so long as it is "regulatory" and "not penal."  An individual may be detained prior to trial without violating due process safeguards of the Fifth Amendment so long as the individual's confinement does not amount to ''punishment of the detainee.'' *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). *See also United States v. Salerno*, 481 U.S. 739, 748 (1987).  No courts have set a specific time period for when detention may violate due process. *See Salerno* 481 U.S. at 747 n.4 (noting "[w]e intimate no view as to the point at which detention in a particular case becomes excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."). *United States v.*

Test

*Briggs*, 697 F.3d 98, 101 (2nd Cir. 2012)(''We have consistently held that due process places no bright-line limit on the length of pretrial detention''). Length of detention alone is not dispositive and carries no fixed weight in the review process. *United States v. Zannino,* 798 F.2d 544, 547 (1st Cir.1986)

Courts have applied some of the following factors concerning whether continued detention may violate due process: (1) the non-speculative length of expected confinement; (2) the extent to which the government bears responsibility for delay; (3) the gravity of the charges; and (4) the strength of the evidence justifying detention including the existence of any rebuttable presumption for detention. *See United States v. Watson,* 475 Fed. Appx. 598, 601 (6th Cir. 2012); *Briggs,* 697 F.3d at 101; *United States v. Hare,* 873 F.2d 796, 801 (5th Cir. 1989); *United States v. Omar,* 157 F. Supp.3d 707, 715 (M.D. Tenn. 2016). The Eighth Circuit has specifically addressed criteria that should be considered in evaluating due process. Those criteria include factors that were relevant to the initial detention decision, such as: (a) the seriousness of the charges, (b) the strength of the government's proof that defendant poses a risk of flight or danger to the community, (c) the strength of the government's case on the merits (d) the length of detention; (e) the extent of the Government's responsibility for the delay of trial; and (3) the strength of the evidence upon which the detention was based. *United States v. Archambault*, 240 F. Supp. 2d 1082, 1084 (D.S.D. 2002) citing *United States v. Zannino,* 798 F.2d 544, 547 (1st Cir.1986) and *United States v. Orena,* 986 F.2d 628, 630 (2d Cir.1993). These factors will be addressed in the Argument section.

No one factor is controlling or dispositive. However, where pretrial detention is lengthy, for example in excess of two years or more, continued detention is justified where the Government is not responsible for any significant portion of the delay. *See Briggs*, 697 F.3d at 101 ("The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence

5

justifying detention must be if it is to be deemed sufficient to justify the detention's continuance"); *United States v. Aileman*, 165 F.R.D. at 586–89 (where detention is at least thirty-five months the other two factors of the due process analysis, Government responsibility for delay and threats to the government's regulatory interests needed to weigh strongly in favor of the government to justify continued detention).

In their motion, the Defendant's correctly point out that the Eighth Circuit has held that for Defendants to seek to re-open a detention hearing or reconsider an order of detention a Defendant must, first, "present[] information that was not known or available to him at the time of his original detention hearing, and then, second, show that such information is material to and has a substantial bearing on whether he should remain detained." *United States v. Petters*, 2009 U.S. Dist. LEXIS, 6489 (S.D. Minn) (quoting *United States v. Archambault*, 240 F. Supp. 2d 1082, 1084 (D.S.D. 2002). *See also United States v. Rush*, 2017 WL 6541436.  However, in this case the Defendants have not met that burden.  The Defendants have not presented any new information that was not known or available to them at the time of their original detention hearing.  No circumstances have changed.  Similarly, they have not shown that such information is material to and has a substantial bearing on whether they should remain detained.

### III.   ARGUMENT

A.   <u>Non–Speculative Length of Expected Confinement</u>

In this case, some Defendants continue to experience a lengthy detention.  Counsel accurately pointed out that three Defendants have been confined for 43 months, to date. Given the nature of the case and the type of underlying investigation, pretrial litigation will be protracted. Pretrial motions concerning Fourth Amendment issues, international depositions, potential litigation involving the Foreign Intelligence Surveillance Act (FISA) *See* 50 U.S.C. Chapter 36., and litigation pursuant to the Classified Information Procedures Act (CIPA) *See* Title 18, U.S.C.

6

App III are all likely to be pursued and required. There is no trial date set.

While pretrial matters are complex and lengthy, there is a path forward and the course is not speculative. This Court has held numerous status conferences at regular intervals. At each conference the parties have been examined about the status and timing of the case and have been informed of the Court's decisions as well as discussed any concerns. The Court has set regular deadlines for discrete litigation needs and goals. The Government has also filed pleadings to assure that the case continues without unnecessary delay and that the parties are informed. For example, the Government filed a disclosure of arguably suppressible evidence (Doc. 60) and a motion for a hearing pursuant to CIPA and a supporting memorandum of Law (Doc. 180). Similarly, the Defendants routinely file reports with the Court entitled "Responses to the Court" to keep the Court apprised of movement and activity in the case. (Doc. 162, 183, 192, 210, 304, 313-317, 425).

      B.      The Extent to Which the Government Bears Responsibility for Delay

The length of pretrial detention in this case exceeds three years. In evaluating any delay, courts have examined the extent to which the Government is responsible for any significant portion of the delay whether special circumstances indicate that the Defendant's release would pose an extraordinary threat to the government's regulatory interests in detention. *See Omar*, 157 F. Supp. 3d at 716 (quoting *United States v. Cos*, No. CR 05–1619 JB, 2006 WL 4061168, at 6–7 (D.N.M. Nov. 15, 2006)); *Aileman*, 165 F.R.D. at 589. To assess whether a lengthy pretrial detention violates due process, the Court does not need to determine a precise amount of pretrial delay that attributable to the Government or assess whether Government caused and contributed to the delay. *Id. See also United States v. Rush*, 2017 WL 6541436 (quoting *Gonzales Claudio*, 806 F.2d at 342).

It is important to note that on February 11, 2015, March 10, 12, 23, 2015, and April 7,

7

2015, this Court found that this is a complex case. *See* Doc. 31, 33, 35, 67, 78, 113, 135.  That designation warranted orders permitting the case to proceed beyond the limits set out in the Speedy Trial Act in the interests of justice.  Further, the case has become even more complex given issues raised by the defense  Specifically, (a) the defense requested that the Government translate and transcribe thousands of pages of text, audio records, and other materials (b) the defense requested and is pursuing depositions of multiple witnesses located abroad, and (c) the defense raised and is litigating pretrial matters concerning the defense of lawful combatant immunity status (an issue of first impression in this District).   These are lengthy and intensive endeavors.  The Defendants do not dispute that the unique circumstances of this case occasioned the complexity of the case and the length of time to litigate matters that are beyond any party's control.

This Court has held regular status conferences to address the previously mentioned issues and a multitude of other mattes.  A review of the record clearly demonstrates that on almost all occasions the defense requested additional time to review and address matters raised by the Court.  The defense requested, and for good reason received, multiple continuances to brief matters, conduct its own investigation, and otherwise review the vastly voluminous discovery.  Similarly, the defense is presently requesting a lengthy period of additional time to conduct depositions.  Inasmuch, there have been delays in this case that were the consequence of strategic decisions made by the Defendants and for good cause.  The Government should not be charged with delays due to these circumstances.

### 1. *Delay Resulting From Requests for a Hearing Pursuant to Frye v. Missouri*

On February 17, 2017, the Government filed a request pursuant to *Missouri v. Frye*, 132 S. Ct. 1399 (2012) for a hearing. (Doc. 363)   The  Government made its request in anticipation of seeking a superseding indictment in the case concerning all Defendants.  The Court granted the

Government's request and set hearings for March 21, 2017 (ECF 364-367).  Subsequently, the defense and the Government engaged in negotiations and discussions concerning the timing of the *Frye* hearings and any superseding indictment.  Based on those negotiations, and at the Defendant's request, the Government agreed to postpone seeking a superseding Indictment.  Instead, at the Defendant's request, the parties agreed to address and litigate the Defendants' assertions concerning the applicability of lawful combatant immunity.  A record of those discussions was made during a status conferences when the Defendants were present, and on one occasion before the District Court.  As a result, the Government moved to vacate the *Frye* hearings, which the Court ordered on March 9, 2017. (ECF 370).  Thereafter, pretrial litigation commenced concerning the applicability of lawful combatant immunity, as raised by the Defendants.  That litigation remains ongoing.  Therefore, any delay in pursuing or seeking a superseding indictment, or delay due to litigating combatant immunity has been occasioned, in a large part, to the Defendant's own request.

      2.     *Delays Caused by Defendants' Requests for Time to Consider Pretrial Motions and Hearing.*

Beginning in February 2015, the respective Defendant's made requests for additional time to obtain and review discovery materials and to determine whether and/or what pretrial motions to file. [1]  For good reason given the complexity of the case and the truly voluminous nature of the discovery and evidence, those and numerous other similar request for additional time were granted.  Being familiar with the volume and complexities of the case the Government never objected to defense request for additional time.

---

[1] *See* ECF 34 (Defendant Hodzic), ECF 66 (Defendant Rosic), ECF 72 (Defendant Salkicevic)

9

By way of example, on May 18, 2015, this Court entered an Order scheduling that Defendant's Motions to Dismiss be filed by June 24, 2015 (Doc. 170.  On June 23, 2015, the Defendants requested, unopposed, additional time to file Motions to Dismiss.  (Doc. 182)  At a status conference hearing on June 25, 2015, the Court granted the Defendant's request and entered a new deadline of October 30, 2015 for filing non-evidentiary motions to dismiss. (ECF 184)   A status conference was held on August 20, 2015, wherein the Court granted an extension of time for the Defendants to file pretrial motions until October7, 2015 (ECF 193).  A status conference was held on October 8, 2015.   At the hearing, Defendant's made an unopposed motion for additional time and this Court gave until of November 16, 2015 for filing Motions to Dismiss (ECF 213). On November 12, 2015, Defendants filed an unopposed motion for additional time to file motions. (Doc. 222).  On November 19, 2015, a status conference was held and the Court ordered that the Defendants had until December 9, 2015 to file motions to dismiss.[2] (ECF 233)

On June 16, 2016, the Defendants filed a proposed pretrial hearing schedule.  In their request, the defense asked for time up to and including October 14, 2016 to file pretrial motions, with a hearing on December 11, 2016. (Doc. 304)  On June 20, 2016, the Court granted the Defendant's unopposed request.  (Doc. 306)  On October 1, 2016, the Defendants filed a motion for additional time to file pretrial motions. (Doc 345).  On October 5, 2016, the Court granted the unopposed request and, ordered that pretrial motions were due no later than January 30, 2017, with a pretrial evidentiary hearing reset for March 20, 2017. (Doc. 346)  On January 24, 2017, the Defendants filed a request for additional time to file pretrial motions (Doc 356).  Following a regularly scheduled status conference hearing, on February 13, 2017 the Court granted the

---

[2] Defendants filed motions to dismiss on November 16, 2015 (Doc. 223-228) and December 8, 2015 (Doc. 236) and thereafter the parties briefed the matter in the weeks to follow.

10

Defendant's request and ordered Defendants must file any further traditional pretrial motions no later than May 1, 2017 (ECF 361). On March 28, 2017, the Defendants filed an unopposed motion for additional time to file motions.(Doc. 372)  This Court grantedthe Defendant's motion on May24, 2017 and gave a new deadline of June 30, 2017, for filing motions related to any affirmative defenses, specifically lawful combatant immunity (Doc. 381) Beginning in June 2017 the Defendants filed such motions. [3]

Requests for additional time have occurred throughout the proceedings.  The Government does not suggest that these requests were unnecessary or the result of a lack diligent work by any party.  To the contrary.  The delays have been in the Defendants' interests and the interests of justice.  The Government regularly communicates with the defense about the status of the case, discovery, and the issues raised by the Court.  However, meaningful requests for additional time have been at the Defendant's request and the Government does not bear responsibility for delays caused by such requests.

3.     *Delays Caused by Change of Defense Counsel*

Since the inception of the case, developments have arisen concerning counsel retained by and appointed to represent the Defendants.  Defendant Salkicevic is retained and represented by attorney Andrea Gambino from Chicago, Illinois.  On June 1-2, 2017, this Court also appointed local counsel, Christian Goeke, to assist in representing Defendant Salkicevic.  On July 23, 2018, Mr. Goeke filed a motion to withdraw as counsel because he accepted new employment. (Doc.

---

[3] Following a brief motion for additional time by the Defendants (Doc. 387, 388), the Defendants filed motions t dismiss concerning lawful combatant immunity and the parties briefed the matter. *See* Doc. 389 – 395.  During the briefing schedule, the all parties requested and received short extensions of time to respond to motions and briefs (Doc. 389, 401-402, 406).  This Court entered an order on the Defendants' motions on May 9, 2018 (Doc. 429) and the parties briefed their respective objections to the Court's report and recommendations.

449).  This Court granted the motion and appointed attorney Joan Miller to assist in representing Defendant Salkicevic. (Doc. 451, 453).

Defendant Sedina Hodzic followed a similar path.  On February 7, 2015, the Court appointed attorney Paul D'Agrosa to represent Defendant Sedina Hodzic (Doc. 20-21).  On March 29, 2016, Defendant Sedina Hodzic filed a motion for reconsideration of counsel. (Doc. 285). Pursuant to Defendant Sedina Hodzic's request, on May 25, 2016 the Court appointed Attorney Susan Kister to assist in her representation. (Doc. 294).  On January 31, 2018, Mr. D'Agrosa filed a motion to withdraw as counsel because he accepted new employment. (Doc. 418)  The court granted the motion on February 6, 2018 and appointed attorney Kim Fretter as new counsel  (Doc. 421).  While not does not appear that Ms. Kister has formally withdrawn, undersigned counsel is informed that Ms. Kisner also accepted new employment and is no longer representing Defendant Sedina Hodzic.

Changes in counsel were due, in part, to the requests made by individual Defendants, and changes defense counsel employment and they are necessary in the interest of justice.  By its very nature, assignment of new counsel in a case such as this causes significant delay.  New counsel must to become familiar with their client, the facts of the case, complex legal issues, and voluminous discovery.  To assist in mitigating any delay, the Government offered to meet with new counsel and review discovery as well as any materials affiliated with the case.  In summary, the delay is warranted, and the Government should not be faulted for timing issues due to these circumstances.

    **C.**    **The Gravity Of The Charges And The Strength Of The Evidence Justifying Detention Including The Existence Of Any Of Any Rebuttable Presumption For Detention.**

As the Government argued during the detention hearings, the Government believes that the

12

Defendants pose both a danger to the community and a risk flight.  Indeed, this is a case in which there exists a presumption under the Bail Reform Act that there exist no conditions which could reasonably assure community safety or which could assure that the Defendants would appear as required at future court dates.   In support of its arguments to detain, the Government cited and continues to refer the following factors.

        1.        <u>Gravity of the case and seriousness of the charges</u>

The Government's case and evidence is strong.  As is apparent from allegations in the Indictment, this is a case involving acts of material support to terrorists, the killing of persons abroad, and a conspiracy to do the same.  The case is gravely serious.  The evidence includes recorded telephone conversations, Facebook messages and posts in which the Defendants discussed, planned and executed their conspiracy to provide material support to persons who were fighting in Syria and the surrounding region.

        2.        <u>Strength of the Government's case</u>

The Government's evidence is that the material support provided by the Defendants was substantial.  That material support was provided to Abdullah Ramo Pazara and others who were fighting in Syria.  The material support included: thousands of dollars in United States currency (money) United States military uniforms, ghille (sniper) suits, military combat boots, military surplus goods, tactical gear and clothing, firearms accessories, optical equipment and range finders, military backpacks, headlamps, rifle scopes, and equipment.  The defendants provided the support knowing and intending that such money and property were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a).

The Government's evidence is that the Defendants openly discussed how the support and supplies would be used by the persons fighting in Syria.  They posted messages, photographs and

13

videos on Facebook of the supplies and their support. They also posted and commented on images of fighters who were killed in Syria and the region. The defendants were also aware and knew of the violent activities in which the persons who received their support engaged. There evidence (provided in discovery) that those who received support engaged in grave acts of violence to include: killing combatants, tactical assaults on buildings and other combatants, slaughtering prisoners, and beheadings. The recipients of the support also took prisoners as chattel.

The Government also has evidence (and provided in discovery) that Defendants Rosic and Hodzic discussed plans to travel to Syria to fight in the conflict alongside other combatants, and with the persons who received the material support they sent. This included joining persons in Syria who were fighting on behalf of the Islamic State of Iraq and Sham (ISIS), a designated foreign terrorist organization. The evidence also includes Defendant Rosic attempting to travel outside of the United States on two occasions while the conspiracy was ongoing. There is also video evidence of Defendant Rosic an Abdullah Ram Pazara training outdoors with firearms prior to Rosic's attempted travel.

    2.    <u>Risk of Flight Justifying Detention</u>

The Court has previously heard and received argument that the Defendants pose a flight risk. Defendant Salkicevic is a native Bosnian national who resided in Schiller Park, Illinois. She came to the United States as a refugee in 1999 and became a naturalized citizen in 2006. She has no ties to the Eastern District of Missouri. Furthermore, she has family in Bosnia and prior to her arrest, traveled to Bosnia. Inasmuch, there is a serious risk that Defendant Hodzic would flee.

Defendant Hodzic is a Bosnian national who is married to co-defendant Sedina Hodzic, also a Bosnian national. Ramiz and Sedina Hodzic previously lived in Teslic, Bosnia-Herzegovina and came to the United States as refugees in February 1998. Their immigration status remains

14

unchanged. Prior to his arrest he was employed as an over the road, commercial truck driver. The Government's has evidence that, prior to their arrest, Ramiz Hodzic and his wife discussed plans to move to Bosnia where they had land and property and intended to acquire property. Inasmuch, there is a serious risk that Defendant Hodzic would flee.

Defendant Rosic is a native Bosnian who resided in Utica, New York. Defendant Rosic is a naturalized citizen. He has no ties to the Eastern District of Missouri. Prior to his arrest he was employed as an over the road, commercial truck driver. As previously noted, during the time frame of the conspiracy he attempted to travel abroad on two occasions. Inasmuch, there is a serious risk that Defendant Rosic would flee.

3. <u>Rebuttable presumption of Detention</u>

As previously outlined, given that charges levied against the defendants there is a strong rebuttable presumption of detention in this case. At the inception of detention proceedings the Defendants failed to meet their burden and rebut that presumption.

WHEREFORE, because there are no conditions or combination of conditions which will reasonably assure the appearance of the Defendants as required, and the safety of any other person and the community, the Government requests this Court to deny the Defendant's request for reconsideration or pretrial release and continue to order the Defendants detained prior to trial.

Respectfully Submitted,

JEFFREY B. JENSEN
United States Attorney

/s/ Matthew T. Drake
MATTHEW T. DRAKE – 46499MO
Assistant United States Attorney

15

*/s/ Howard J. Marcus*
HOWARD J. MARCUS – 29756MO
Assistant United States Attorney

*/s/ Kenneth R. Tihen*
KENNETH R. TIHEN – 37325MO
Assistant United States Attorney

*/s/ Joshua D. Champagne*
JOSHUA D. CHAMPAGNE – 1013246DC
Trial Attorney – NSD/Department of Justice

## CERTIFICATE OF SERVICE

      The undersigned certifies that a true and correct copy of Government's Response to Defendants' Joint Objections to the Report and Order was electronically filed and served on the Court's electronic filing system:

Dated:        October 19, 2018.

                        JEFFREY B. JENSEN
                        United States Attorney

                        */s/ Matthew T. Drake*
                        MATTHEW T. DRAKE – 46499MO
                        Assistant United States Attorney